**Julie A. LOVELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 65A05–0312–CR–658.

Court of Appeals of Indiana.

Aug. 12, 2004.

Transfer Denied Sept. 28, 2004.

John D. Clouse, Ivan A. Arnaez, Evansville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Daniel Jason Kopp, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Julie Lovell appeals her convictions for dealing in methamphetamine as a class B felony [1] and possession of chemical reagents or precursors with intent to manufacture as a class D felony. [2] Lovell raises four issues, which we partially consolidate and restate as:

I. Whether the trial court abused its discretion by admitting evidence obtained as a result of the police search of Lovell's garbage bags into evidence;

II. Whether the trial court properly denied Lovell's motion for judgment on the evidence; and

III. Whether the evidence is sufficient to sustain Lovell's convictions for dealing in methamphetamine as a class B felony and possession of chemical reagents or precursors with intent to manufacture as a class D felony.

We affirm in part and reverse in part.

The relevant facts follow. On March 6, 2003, Posey County sheriffs deputies went to a residence on Old Blairsville Road in Posey County, Indiana. When the deputies approached the residence, they noticed a strong smell of ether. They knocked on the front door, but there was no answer. One of the deputies parked his marked police car in a nearby parking lot so that he could observe the residence, and a short time later, the deputy observed four individuals, including Lovell, exit the residence and get into two separate vehicles.

Posey County Narcotics Unit Officer Terry Cooper and Deputy Jim Reeves were called to assist. Upon arriving at Lovell's residence, they noticed the odor of ether coming from the residence. The officers also saw three bags of trash next to the mailbox. The officers took the three trash bags, transported them to the Posey County Jail, and examined the contents of the trash bags for evidence of illegal drug activity. The officers found evidence of methamphetamine manufacture, sale, and use. Specifically, the officers found a plastic bag with the corners cut off on the end, burnt aluminum foil with residue, a hydrochloric generator, a piece of a rubber hose, batteries, which had their lithium removed, a receipt for "Liquid Fire," numerous coffee filters, and mail addressed to Lovell. Based upon this evidence, officers obtained a search warrant for Lovell's residence.

Officers then executed the search warrant. The officers searched a vehicle reg-

---

1. Ind.Code § 35–48–4–1 (Supp.2003).

2. Ind.Code § 35–48–4–14.5 (2003). Subsequently amended by Pub.L. No. 225–2003, § 5 (effective date July 1, 2003).

istered to Lovell, and inside the vehicle, officers found a red air tank, which smelled of anhydrous ammonia. The officers also searched the area surrounding the residence and found a green thermos,[3] two starting fluid ether cans that had been punctured to extract the ether, white paper, which had been extracted from a lithium battery in order to obtain the lithium, and a plastic bag with a white powder residue. Inside the kitchen, officers found a coffee filter with residue, pieces of aluminum foil with residue, Morton Salt, Hi–Top Salt, Epsom Salt,[4] and a smoking hydrochloric generator with residue. Inside the bedroom, officers found a bowl with a residue, later identified as methamphetamine, two capsules with white powder, and an ink pen, which had been altered for methamphetamine use. Inside the bathroom, officers found a half-full bottle of Liquid Fire, and inside the living room, officers found a pair of scissors with burn marks on it. Based upon this evidence, the officers concluded that methamphetamine had been manufactured at this location.

The State charged Lovell with dealing in methamphetamine as a class B felony and possession of chemical reagents or precursors with intent to manufacture as a class D felony. Prior to trial, Lovell filed a motion to suppress the evidence seized as a result of the search of the three garbage bags and the evidence seized pursuant to the subsequent search warrant. After a hearing, the trial court denied Lovell's motion. During the trial, Lovell made a continuing objection to the evidence that was the subject of her motion to suppress. After the State's case in chief, Lovell made a motion for judgment on the evidence, arguing that:

Now on Count I, as I look at the statute, actually one of the definitions.... Preliminary Instruction "F", which was given to the jury, it states, "Manufacture means ....", and we go down to the last paragraph. "It does not include the preparation, compounding, packaging or labeling of a controlled substance by practitioner or (b) by a practitioner ....", and so on. Now the State has the burden of proof on absolutely everything. They have the burden of proof as to the manufacturing, but they also have the burden of proof to show that she does not fit under this exception. And I believe that the failure to show that she does not fit in that exception, if this were to go to the jury, there would be no evidence at all. Now Ms. Lovell does not have a duty to do anything in this case. The entire burden is upon the State. So as to Count I, they did not put on any evidence to show that she does not .. that she fits .. they did not ... they put in absolutely no evidence to show that the last portion of "F" would apply or not apply. Basically that area is blank, and when it is written into the definition, that is almost considered part and parcel of elements.... We believe that they failed to meet all the elements of the case. They failed to meet the requirements of the definition of manufacturer, and therefore, there must be a directed verdict on Count I.

*Id.* at 198–199. The trial court denied Lovell's motion for judgment on the evidence, noting that:

The Court finds that the State does not have to disprove exceptions to the statute unless there is evidence produced that would require counter evidence.

---

3. Officer Terry Cooper of the Posey County Narcotics Unit testified that anhydrous ammonia is commonly transported in this type of thermos.

4. Officer Cooper testified that salt is used in manufacturing methamphetamine.

For example, in this case, unless there was some evidence that [Lovell] was, in fact, a practitioner or working under the direction of a practitioner. So the Court is going to overrule the Motion for Judgment on the Evidence.

*Id.* at 201. The jury found Lovell guilty as charged, and the trial court sentenced her to ten years in the Indiana Department of Correction.

## I.

▇ The first issue whether the trial court abused its discretion by admitting evidence obtained as a result of the police search of Lovell's garbage bags into evidence. The admission of evidence is within the sound discretion of the trial court. *Hyppolite v. State,* 774 N.E.2d 584, 592 (Ind.Ct.App.2002), *trans. denied.* The decision to admit evidence will not be reversed absent a showing of manifest abuse of discretion resulting in the denial of a fair trial. *Id.* An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.*

Lovell argues that the search of her garbage bags violated Article I, Section 11 of the Indiana Constitution, which provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

When evaluating a search or seizure under Article I, Section 11, we must determine whether under the totality of the circumstances the State's intrusion was reasonable. *State v. Stamper,* 788 N.E.2d 862, 865 (Ind.Ct.App.2003), *trans. denied.*

In *Moran v. State,* 644 N.E.2d 536, 537 (Ind.1994), our supreme court addressed the issue of whether police conduct in taking and examining trash put out for pickup was consistent with the protection afforded by the Indiana Constitution. There, police officers searched several plastic garbage cans that were approximately one foot from the street in front of a house and near the mail box. *Id.* at 538. The garbage cans had been set out for trash pickup, which was scheduled for that day. *Id.* Moran filed a motion to suppress the evidence seized as a result of the search of the garbage cans. *Id.* at 537. The trial court denied his motion, we affirmed, and our supreme granted transfer. In addressing this issue, our supreme court noted that:

We do not lightly entertain intrusions on those things that we regard as private, i.e. concealed and hidden. However, at the same time the inhabitants of this state have always valued neighborliness, hospitality, and concern for others, even those who may be strangers. Here, an open front walk leading to the front porch of a house is accurately judged by the passerby to be an open invitation to seek temporary shelter in the event of a sudden downpour. Stepping on that part of a yard next to the street or sidewalk to seek shade from a tree or to pick edible yet valueless plants growing in the lawn has been regarded proper conduct. It is permissible for children at play on the street or in the alley to examine the contents of garbage cans to find interesting items, so long as they do not make a mess. It is not infrequent that valuable items are placed in the trash in hopes that someone passing by will see them there and will take them and make good use of them. It has often been said that if you do not want others to know what you drink, don't put

empties in the trash. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops, and other members of the public.

(internal footnotes and quotations omitted). Our supreme court also acknowledged that "Hoosiers are not entirely comfortable with the idea of police officers casually rummaging through trash left at curbside." *Id.* However, our supreme court concluded that the curbside search of Moran's trash was reasonable based upon the totality of the circumstances because: (1) police officers reached the trash without trespassing on the property; (2) the search was performed at a time when neighbors would not be disturbed; and (3) the search was performed in a manner consistent with typical trash collection. *Id.*

Likewise, here we find the officers' search of Lovell's garbage bags to be reasonable under the totality of the circumstances. When officers arrived at Lovell's residence, they saw three garbage bags next to Lovell's mailbox. There were several residences nearby, and officers saw that many of those residences also had trash next to their mailboxes. Lovell's garbage bags, along with the garbage bags of her neighbors, had apparently been set out for trash pick-up. Officers then seized the three garbage bags next to Lovell's mailbox. In seizing Lovell's garbage bags, the officers conducted themselves in the same manner as would be appropriate for those whose duty it was to pick up the garbage bags. We also find no indication in the record that in seizing Lovell's garbage bags, officers trespassed on Lovell's property or disturbed Lovell's neighbors. Based upon our review of the record, we conclude that Lovell's constitutional rights were not violated when officers searched her garbage bags, and the trial court did not abuse its discretion by admitting evidence obtained as a result of the police search of Lovell's garbage bags.[5] *See, e.g., Moran,* 644 N.E.2d at 541.

## II.

The next issue is whether the trial court properly denied Lovell's motion for judgment on the evidence. A motion for judgment on the evidence should be granted only if there is a total lack of evidence as to the guilt of the accused or where there is no conflict in the evidence and it is susceptible only to an inference in favor of the accused. *Wilcox v. State,* 664

---

**5.** Lovell argues that officers trespassed onto her property in order to seize her garbage bags. "Allegations of error in overruling a motion to suppress are not preserved for appellate review unless the record reveals a proper objection when the evidence is offered at trial." *Edwards v. State,* 682 N.E.2d 800, 802 (Ind.Ct.App.1997). Although Lovell objected to the admission of the evidence at trial, all of the specific testimony she uses to support her argument comes from the suppression hearing. The testimony from the suppression hearing along with any applicable exhibits are not relevant to our consideration of whether the trial court abused its discretion by admitting the evidence seized as a result of the search of Lovell's garbage bags. Rather, our review of this issue is limited to the trial transcript. We find no evidence in the trial transcript indicating that officers trespassed onto Lovell's property in order to seize her garbage bags.

Further, we need not reconcile *State v. Stamper,* 788 N.E.2d 862, 866 n. 2 and *Litchfield v. State,* 808 N.E.2d 713, 716 (Ind.Ct. App.2004), which to some extent, at least, may not be reconcilable. In our case, it was not necessary for the officer to go onto the defendant's property to reach the garbage bags that had apparently been placed by the mailbox along the road as had been done by the neighbors with their garbage bags. Under the approach of *Stamper* or *Litchfield,* the seizure of the garbage bags was, in the totality of the circumstances, reasonable. *See, e.g., Moran,* 644 N.E.2d at 541.

N.E.2d 379, 382 (Ind.Ct.App.1996); Ind. Trial Rule 50. A motion for judgment on the evidence will not be granted if the State presented a prima facie case. *Id.* Upon review, we look at the denial of a motion for judgment on the evidence as we do all challenges to the sufficiency of the evidence, and we neither reweigh evidence nor judge witness credibility. *Id.*

Lovell argues that the trial court erred by denying her motion for judgment on the evidence because the State failed to meet its burden of production with respect to Count I, dealing in methamphetamine as a class B felony. Dealing in methamphetamine as a class B felony is governed by Ind.Code § 35–48–4–1 and provides that: "A person who ... knowingly or intentionally ... manufactures ... cocaine, a narcotic drug, or methamphetamine, pure or adulterated, classified in schedule I or II ... commits dealing in cocaine, a narcotic drug, or methamphetamine, a Class B felony." The term "manufacture" is defined as:

(1) the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. It does not include the preparation, compounding, packaging, or labeling of a controlled substance:

(A) *by a practitioner as an incident to his administering or dispensing of*

*a controlled substance in the course of his professional practice;*

(B) *by a practitioner, or by his authorized agent under his supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale;* or

(2) the organizing or supervising of an activity described in subdivision (1).

Ind.Code § 35–48–1–18 (Supp.2003) (emphasis added). Lovell argues that the State needed to prove that she was not a practitioner within the meaning of I.C. §§ 35–48–1–18(1)(A)–(B). Lovell bases this argument on *Poe v. State,* 775 N.E.2d 681, 685 (Ind.Ct.App.2002), *trans. denied,* where we held that the personal use exception [6] was an element of the definition of manufacture for which the State had the burden of proof. Lovell contends that, like the personal use exception, the State had the burden to prove that she was not a practitioner as defined in I.C. §§ 35–48–1–18(1)(A)–(B). The State does not challenge that contention but argues that, based upon the evidence it presented at trial, the jury could have reasonably inferred that Lovell was not a practitioner with the meaning of I.C. §§ 35–48–1–18(1)(A)–(B).

The State presented evidence that deputies approached Lovell's residence, smelled a strong odor of ether, and knocked on the front door but there was no answer. A short time later, one of the deputies, who was in a nearby parking lot, observed four individuals, including Lovell, exit the residence. After obtaining a search warrant, officers searched Lovell's residence, her vehicle, and her yard and found evidence of the manufacture, sale, and use of meth-

---

**6.** Prior to a 2001 amendment to I.C. § 35–48–1–18, the definition of manufacturer included a personal use exception, which provided that manufacturing did not include "the preparation or compounding of a controlled sub-

stance by an individual for his own use...." *See* Pub.L. No. 17–2001, § 18 (effective date July 1, 2001). On July 1, 2001, the legislature removed this language from the text of I.C. § 35–48–1–18.

amphetamine. For example, officers found a red air tank, which smelled of anhydrous ammonia, two starting fluid ether cans, which had been punctured to extract the ether, white paper, which had been extracted from a lithium battery in order to obtain the lithium, a plastic bag with a white powder residue, a coffee filter with residue, pieces of aluminum foil with residue, several types of salts, a smoking hydrochloric generator with residue, two capsules with white powder, an ink pen, which had been altered for methamphetamine use, a half-full bottle of Liquid Fire, and a pair of scissors with burn marks. The officers also a found a bowl with a white residue, later identified as methamphetamine. The State presented evidence explaining how these ingredients and objects, which were recovered from Lovell's residence, are commonly used in the manufacture of methamphetamine.

The officers found the specific evidence of methamphetamine manufacture in several rooms of Lovell's residence, in her car, and strewn throughout her yard. It was reasonable for the jury to conclude that the location and type of this evidence was inconsistent with the location and type of evidence, which would indicate that a "practitioner" had been working out of Lovell's residence to administer or dispense a controlled substance in the course of a professional practice or had prepared or was preparing methamphetamine in the course of performing research, teaching, or chemical analysis. Moreover, during Officer Cooper's testimony, he described the process of methamphetamine manufacture to the jury by dividing the process into several distinct steps that each required specific ingredients and objects. The State's presentation of evidence included the presentation of ingredients and objects used in almost all of the steps identified by Officer Cooper. Further, Lovell's behavior in attempting to leave her residence

undetected after officers had knocked on her door is not consistent with the behavior of a "practitioner" acting within the confines of the law. We conclude that based upon the State's presentation of evidence, it was reasonable for the jury to conclude that Lovell was not acting as a practitioner as defined by I.C. §§ 35–48–1–18(1)(A)–(B), and the trial court properly denied Lovell's motion for judgment on the evidence on this issue.

### III.

The last issue is whether the evidence is sufficient to sustain Lovell's conviction for dealing in methamphetamine as a class B felony and possession of chemical reagents or precursors with intent to manufacture as a class D felony. When reviewing a claim of insufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied.* Rather, we consider the evidence most favorable to the judgment and the reasonable inferences therefrom. *Id.* We will affirm a conviction if evidence of probative value exists from which the trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.* Circumstantial evidence alone is sufficient to sustain a conviction. *Floyd v. State,* 791 N.E.2d 206, 210 (Ind.Ct.App. 2003), *trans. denied.*

### A.

Dealing in methamphetamine as a class B felony is governed by I.C. § 35–48–4–1, which provides that: "A person who ... knowingly or intentionally ... manufactures ... methamphetamine ... commits dealing in ... methamphetamine, a Class B felony." Manufacture is defined as:

(1) the production, preparation, propagation, compounding, conversion, or pro-

cessing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container. It does not include the preparation, compounding, packaging, or labeling of a controlled substance:

(A) by a practitioner as an incident to his administering or dispensing of a controlled substance in the course of his professional practice; or

(B) by a practitioner, or by his authorized agent under his supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale; or

(2) the organizing or supervising of an activity described in subdivision (1).

I.C. § 35–48–1–18. Lovell argues that the State failed to present any evidence proving that she manufactured methamphetamine. We disagree.

The State presented evidence that deputies approached Lovell's residence, smelled a strong odor of ether, and knocked on the door but there was no answer. A short time later, one of the deputies, who was in a nearby parking lot, observed four individuals, including Lovell, exit the residence. After obtaining a search warrant, officers searched Lovell's residence and found evidence of the manufacture, sale, and use of methamphetamine. For example, in Lovell's vehicle, officers found a red air tank, which smelled of anhydrous ammonia. Outside Lovell's house, officers found two starting fluid ether cans, which

had been punctured to extract the ether, white paper, which had been extracted from a lithium battery in order to obtain the lithium, and a plastic bag with a white powder residue. Inside Lovell's house, officers found a coffee filter with residue, pieces of aluminum foil with residue, several types of salts, a smoking hydrochloric generator with residue, two capsules with white powder, an ink pen, which had been altered for methamphetamine use, a half-full bottle of Liquid Fire, and a pair of scissors with burn marks. The officers also a found a bowl with a white residue, later identified as methamphetamine. The State also presented evidence explaining how these ingredients and objects recovered from Lovell's residence are used in the manufacture of methamphetamine.

Based upon our review of the record, we conclude that evidence of probative value exists from which the trier of fact could have found that Lovell manufactured methamphetamine and was guilty beyond a reasonable doubt of dealing in methamphetamine as a class B felony. *See, e.g.,* *Bush v. State,* 772 N.E.2d 1020, 1022 (Ind. Ct.App.2002) (holding that evidence was sufficient to support the defendant's conviction for dealing in methamphetamine).

### B.

▇ Possession of chemical reagents or precursors with intent to manufacture as a class D felony is governed by I.C. § 35–48–4–14.5(c),[7] which provides that "[a] person who possesses two (2) or more chemical reagents or precursors with the intent to manufacture ... Methamphetamine, a schedule II controlled substance under IC 35–48–2–6 ... commits a Class

---

**7.** In July 2003, prior to Lovell's arrest, the legislature amended I.C. § 35–48–4–14.5. The charging information indicates that Lovell was charged under subsection (c), however, the language pertaining to Lovell's charge is currently found in subsection (e). *See* Pub.L. No. 225–2003, § 5 (effective date July 1, 2003). For purposes of this opinion, we will cite to subsection (c).

D felony." The State alleged that Lovell possessed the following chemical reagents or precursors: ephedrine, sulfuric acid, hydrochloric acid, anhydrous ammonia, and ether, all of which are defined as "chemical reagents or precursors." *See* I.C. § 35–48–4–14.5(a). Lovell argues that the State failed to present sufficient evidence that she possessed a chemical reagent or precursor other than anhydrous ammonia.

I.C. § 35–48–4–14.5(c) required the State to prove that one other chemical reagent or precursor, in addition to anhydrous ammonia, was present. The officers found a smoking hydrochloric generator with residue, and the State argues that "[o]ne may reasonably infer, as did the officers trained in the cleanup of clandestine methamphetamine laboratories, that the residue was hydrochloric acid." Appellee's Brief at 11. However, the State presented no evidence indicating that the residue found at the bottom of this hydrochloric generator was in fact hydrochloric acid, and therefore, we disagree with the State's suggestion that the jury could have reasonably inferred that the residue was hydrochloric acid. We conclude that evidence of probative value did not exist from which the jury could have found that Lovell possessed hydrochloric acid. Because the State failed to prove that Lovell possessed two chemical reagents or precursors, the State failed to prove that Lovell was guilty beyond a reasonable doubt of possession of chemical reagents or precursors with intent to manufacture as a class D felony. *See, e.g., Livermore v. State,* 777 N.E.2d 1154, 1162 (Ind.Ct.App.2002) (holding that the evidence was insufficient to support the defendant's conviction for possession of chemical reagents or precursors with intent to manufacture).

For the forgoing reasons, we affirm Lovell's convictions for dealing in methamphetamine as a class B felony and we reverse her conviction for possession of chemical reagents or precursors with intent to manufacture as a class D felony.

Affirmed in part and reversed in part.

DARDEN, J. and ROBB, J. concur.