Phillip W. **RICHARDSON** and Anita B. Richardson, Appellants–Defendants,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 24A04–0507–CR–378.

Court of Appeals of Indiana.

June 12, 2006.

Transfer Denied Aug. 31, 2006.

Robert G. Gulde, Clarkson & Gulde, P.C., Rushville, IN, Attorney for Appellants.

Steve Carter, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Defendants Phillip W. and Anita B. Richardson (collectively, the "Richardsons") appeal the trial court's denial of their motions to suppress evidence obtained from the warrantless search of their trash. We affirm.[1]

---

1. We heard oral argument in this case on April 12, 2006, at New Albany High School in New Albany, Indiana. We thank counsel for their advocacy and extend our appreciation to New Albany High School for hosting the event and to the members of the Sherman Minton Inn of Court for their hospitality.

## Issues

The Richardsons raise two issues on interlocutory appeal, which we restate as whether the trial court erred by denying their motions to suppress evidence under the Indiana Constitution because:

I. An anonymous tip that the Richardsons manufactured methamphetamine did not give police reasonable, articulable suspicion to search their trash; and

II. The good faith exception established in Indiana Code Section 35–37–4–5 is inapplicable to the present action.

## Facts and Procedural History

On or about August 10, 2003, Indiana State Police Trooper Rick Gill ("Trooper Gill") received a telephone call from a "concerned citizen." Tr. at 5. The citizen, who remained anonymous,[2] informed Trooper Gill that Mr. Richardson "was manufacturing methamphetamine at his residence on Stipps Hill Road and that . . . they [sic] observed him growing marijuana behind an outbuilding behind the residence." *Id.* The caller also told Trooper Gill that Mr. Richardson had a suspended driver's license, a fact which the officer later verified. Trooper Gill relayed the information about Mr. Richardson's possible drug activity to another state trooper, Trooper Wuestefeld, who had already been advised of the same information.[3]

Subsequently, Troopers Gill and Wuestefeld decided to investigate the anonymous tip or tips further. On August 11, 2003, the officers contacted the private trash service used by the Richardsons and arranged to "ride along with the trash truck" as it picked up the Richardson's trash. *Id.* at 12.

Two days later, Trooper Gill, wearing plain clothes, met with the driver of the garbage truck for the ride along. At that time, the trooper inspected the back of the truck and made certain that it was empty. Trooper Gill then rode in the passenger seat of the truck as the driver made a "direct beeline right to the Richardson's trash dumpster." *Id.* at 16. The dumpster was located on private property, in close proximity to three residences, including that of the Richardsons. When the driver backed the truck up to the dumpster, Trooper Gill got out of the truck and watched the driver empty the contents of the dumpster into the trash truck, along with other items that were lying near the dumpster. Trooper Gill then returned to the passenger seat of the garbage truck and the driver drove to a pre-arranged location.

There, Troopers Gill and Wuestefeld searched the trash, directing their attention to four bags in particular. In one bag, the troopers found an empty bottle of mini-ephedrine and a letter addressed to Mr. Richardson at "23104 Stipps Hill Road, Laurel, Indiana." *Id.* at 20. In a second trash bag, the officers found numerous plastic baggies with the corners cut off and a letter addressed to Mrs. Richardson at "23104 Stipps Hill Road." *Id.* at 20–21. The third trash bag contained "zig-zag rolling paper with numerous cut straws containing residue and a burnt hand-rolled cigarette which later tested positive for THC."[4] *Id.* at 21. The troopers also discovered a prescription to Mr. Richardson in the third bag. Finally,

---

**2.** Trooper Gill could only identify the caller as a male.

**3.** The record does not reveal the source of the information that was given to Trooper Wuestefeld.

**4.** THC is the active ingredient in marijuana. *See Oman v. State*, 737 N.E.2d 1131, 1149 (Ind.2000), *reh'g denied, cert. denied,* 534 U.S. 814, 122 S.Ct. 38, 151 L.Ed.2d 12 (2001).

in the fourth bag, the troopers found: (1) two empty bottles of mini-ephedrine; (2) numerous cut straws with residue inside; (3) unaltered plastic baggies; and (4) plastic baggies with the corners cut off. The fourth bag of trash also contained a prescription for Zanax to Mrs. Richardson, other empty prescription bottles, and a "receipt for hydrocodone to [Mr.] Richardson." *Id.*

As a result of the trash search, Troopers Gill and Wuestefeld sought and obtained a search warrant for the Richardsons' home and property. During the execution of that warrant, the officers searched a one-room building where Mrs. Richardson's son was staying and found suspected marijuana plants that had been stripped, pipes containing THC, and plastic baggies containing plant material. The officers also found "eight plastic baggies, two cellophane bags, one corner had been cut on a plastic bags [sic], two cut straws with residue," and a fire extinguisher that tested positive for anhydrous ammonia. *Id.* at 34.

Inside the Richardsons' residence, the troopers found a pipe that later tested positive for THC, cut straws with residue, and empty bottles of mini-ephedrine. The officers also found electronic scales, a brass pipe that tested positive for THC, and approximately eight guns. Near a shed on the property, the officers discovered a propane tank with a rubber hose attached that tested positive for anhydrous ammonia. Behind the shed, the troopers saw growing marijuana plants, which Mrs. Richardson's son later identified as his.

On August 21, 2003, the State charged the Richardsons, individually, with the following Counts: (I) cultivating marijuana as a Class D felony;[5] (II) possessing anhydrous ammonia with the intent to manufacture methamphetamine as a Class D felony;[6] (III) possessing drug paraphernalia as a Class A misdemeanor;[7] (IV) maintaining a common nuisance as a Class D felony;[8] (V) improper handling of anhydrous ammonia as a Class A misdemeanor;[9] and (VI), possessing cocaine as a Class D felony.[10] On October 5, 2004, the Richardsons filed separate motions to suppress the physical evidence seized from their property, which the trial court denied after conducting a hearing. On May 17, 2005, the Richardsons filed a motion to reconsider the denial of the motions to suppress, requesting that the trial court reconsider its judgment in light of *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005). However, the trial court denied this motion.

On June 14, 2005, the trial court certified for interlocutory appeal its orders denying the Richardsons' motions to suppress. The Richardsons then filed this discretionary interlocutory appeal, pursuant to Indiana Appellate Rule 14, which we granted on August 9, 2005.

### Discussion and Decision

#### I. Standard of Review

The Richardsons challenge the trial court's denial of their motions to suppress. We review the denial of a motion to suppress in a manner similar to other sufficiency matters. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997). We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. Id. In reviewing a motion to suppress, we do not reweigh the evidence, and we consider conflicting evi-

5. Ind.Code § 35–48–4–11(2).

6. Ind.Code § 35–48–4–14.5(c).

7. Ind.Code § 35–48–4–8.3(c).

8. Ind.Code § 35–48–4–13(b)(2)(D).

9. Ind.Code § 22–11–20–6(b)(1).

10. Ind.Code § 35–48–4–6(a).

dence most favorable to the trial court's ruling. *Marlowe v. State*, 786 N.E.2d 751, 753 (Ind.Ct.App.2003). However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we also consider the uncontested evidence favorable to the defendant. *Johnson v. State*, 829 N.E.2d 44, 47 (Ind.Ct.App.2005), *trans. denied.* We will affirm the judgment of the trial court if it is sustainable on any legal grounds apparent in the record. *Alford v. State*, 699 N.E.2d 247, 250 (Ind.1998).

## II. Analysis

### A. Constitutionality of the Trash Search

■■■ On appeal, the Richardsons argue that the trial court erred when it denied their motions to suppress evidence because the police violated their rights under Article 1, Section 11 of the Indiana Constitution by searching their trash without reasonable articulable suspicion.[11] Article 1, Section 11 of the Indiana Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 358 (Ind.2005). Recently, our Supreme Court recognized: "[T]he totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer

selected the subject of the search or seizure." *Id.* The *Litchfield* Court noted that, while there may well be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion that the method of the search or seizure imposes on the citizen's ordinary activities; and (3) the extent of law enforcement needs. *Id.* at 361; *see also Crook v. State*, 827 N.E.2d 643, 645 (Ind.Ct.App.2005).

■■■ The Indiana Supreme Court has observed that the "[s]eizure of trash that is in its usual location for pickup is no intrusion at all on the owner's liberty or property interests" because the owner of the property wants, and indeed expects, the trash to be taken away. *Litchfield*, 824 N.E.2d at 363; *see also Love v. State*, 842 N.E.2d 420, 425 (Ind.Ct.App.2006). However, "it is not reasonable for law enforcement to search indiscriminately through people's trash." *Litchfield*, 824 N.E.2d at 363. Therefore, to impose the appropriate balance between the privacy interest of citizens and the needs of law enforcement, two requirements exist for a search of trash to be reasonable. *Edwards v. State*, 832 N.E.2d 1072, 1074 (Ind.Ct.App.2005). First, the trash must be retrieved in substantially the same manner as the trash collector would use. *Litchfield*, 824 N.E.2d at 363. Because the Richardsons' trash service collected the garbage bags in question, this requirement is satisfied in

11. In *California v. Greenwood*, 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), the United States Supreme Court upheld the warrantless search of the defendant's garbage left at the curb for pickup, holding that there was no violation of the Fourth Amendment to the United States Constitution. See *Litchfield v. State*, 824 N.E.2d 356, 358 (Ind.2005). Apparently recognizing that *Greenwood* fore-closes any claim under the Fourth Amendment, the Richardsons do not challenge the search of their trash under the Federal Constitution, but rather ask us to exclude the evidence in question as the product of a search and seizure in violation of Article 1, Section 11 of the Indiana Constitution. *See Litchfield*, 824 N.E.2d at 359.

the present case and the Richardsons do not contend otherwise.

 Second, for the search of the trash to be permissible, the officer must possess a reasonable, articulable suspicion, i.e., the same as that required for a *Terry* [12] stop of an automobile, for seizing the trash. *Litchfield,* 824 N.E.2d at 364; *see also Crook,* 827 N.E.2d at 646. The United States Supreme Court has acknowledged that the concept of reasonable suspicion "is somewhat abstract," prompting the Court to "avoid[ ] reducing it to 'a neat set of legal rules.'" *U.S. v. Arvizu,* 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citations omitted); *see also Sellmer v. State,* 842 N.E.2d 358, 360 (Ind.2006). Nevertheless, the Supreme Court has directed reviewing courts to "make reasonable suspicion determinations by look[ing] at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *State v. Bulington,* 802 N.E.2d 435, 438 (Ind.2004) (quoting *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744). Reviewing courts have also been directed to "review trial court determinations of reasonable suspicion de novo." *Id.*

In the present case, any reasonable suspicion that the troopers may have had that the Richardsons were involved in criminal activity would have originated with the information given to Trooper Gill by the anonymous tipster. In *Alabama v. White,* 496 U.S. 325, 329–30, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the Supreme Court held that, as a general matter, "an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid *Terry* stop." Recently in *Sellmer,* our Supreme Court held that for an anonymous tip to constitute the reasonable sus-

picion necessary for a valid investigatory stop, at least two conditions must be met. *Sellmer,* 842 N.E.2d. at 361. First, "significant aspects of the tip [must be] corroborated by the police." *Id.* (citing *Lampkins v. State,* 682 N.E.2d 1268, 1271 (Ind.1997)). Such corroboration requires that an anonymous tip give the police something more than details regarding facts easily obtainable by the general public to verify its credibility. *Sellmer,* 842 N.E.2d. at 361 (citing *Johnson v. State,* 659 N.E.2d 116, 119 (Ind.1995) (holding that an anonymous tip that provided only information easily obtainable by members of the general public was insufficiently reliable to constitute reasonable suspicion to conduct an investigatory stop)). Second, an anonymous tip, if it is to be considered reliable enough to constitute reasonable suspicion to conduct an investigatory stop, must also demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior. *See Sellmer,* 842 N.E.2d. at 361.

The *Sellmer* Court explained that protection against uncorroborated anonymous tips is necessary because " '[i]f any anonymous caller's allegation, uncorroborated by anything beyond public knowledge, could justify a search, every citizen's home … would be fair game for a variety of innocent and not so innocent intrusions.'" *Id.* (quoting *Jaggers v. State,* 687 N.E.2d 180, 183 (Ind.1997)). We therefore review the anonymous tip that led to the search of the Richardsons' trash under the "totality of the circumstances" so as to determine whether that tip conformed to the principles outlined above and provided Trooper Gill with sufficient indicia of reliability to justify the search.

**12.** A citizen's constitutional rights are not violated by an investigatory stop conducted by a police officer where the officer has a reason-

able articulable suspicion of criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The tip received and acted upon by Trooper Gill does not meet the two-part standard outlined above. The anonymous tip provided the trooper with information regarding where the Richardsons reside and that Mr. Richardson had a suspended driver's license—a fact that was later verified independently by Trooper Gill. However, the tip failed to provide the trooper with several important pieces of information, including the basis of the caller's knowledge or any information detailing the future acts of the Richardsons that would demonstrate the caller's intimate knowledge of the suspects' activities and provide "officers the tools with which to verify its dependability." *See, e.g., Johnson,* 659 N.E.2d at 119.

Although the anonymous tip in this case provided the police with some information that was not readily knowable by a member of the general public—i.e., the suspended driver's license—it lacked any information that would allow the police to corroborate the caller's claim that illegal activity was afoot. *See Sellmer,* 842 N.E.2d at 362 (citing *Florida v. J.L.,* 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (observing that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person")). Nor did the tip provide the Indiana State Police any information regarding the Richardsons' future acts that would bolster its reliability. The anonymous tip, by itself and without further police corroboration, was not sufficiently detailed in predicting the Richardsons' future actions to justify indiscriminately searching their trash.[13] Accordingly, under *Litchfield,* the items found in the trash were not properly discovered evidence.

### B. Good Faith Exception

■ Nevertheless, the State argues that we should not apply the exclusionary rule to the present action "because the trooper relied in good faith on the facially valid search warrant that was consistent with prevailing case law at the time the warrant was issued and executed." Appellee's Br. at 5. Indiana Code Section 35–37–4–5 provides that, in a prosecution for a crime, a court *may not* grant a motion to exclude evidence on the grounds that the search or

---

**13.** We find the present case distinguishable from *Beverly v. State,* 801 N.E.2d 1254, 1262 (Ind.Ct.App.2004), *trans. denied.* There, another panel of this Court held that law enforcement officers had reasonable suspicion to stop the defendant where multiple anonymous 9–1–1 callers corroborated each other with respect to the fact that shots were being fired and to the general description of the car, driver, and location. *Id.* (citing *United States v. Schaefer,* 87 F.3d 562, 566 (1 st Cir.1996) ("Courts often have held that consistency between the reports of two independent informants helps to validate both accounts.")). Here, however, the record does not sufficiently demonstrate that the tips given to Troopers Gill and Wuestefeld corroborated each other to the extent that they contained independent indicia of reliability. Rather, the transcript merely provides:

Q: Now as a result of this particular anonymous call, what did you do next?

[Trooper Gill:] ... I contacted Trooper Wuestefeld and advised him of what I had been advised of on the phone and at that time he told me that he also had information of the same.

Q: Same about what (inaudible)

[Trooper Gill:] Mr. Richardson growing marijuana and a possible methamphetamine lab at his house.

\* \* \* \* \*

Q: Did you make inquiry of Trooper Wuestefeld what the source of his information was?

[Trooper Gill:] I don't [sic] ask him what his source of information was, you'd have to ask him.

Q: Don't you think that's important?

[Trooper Gill:] If Trooper Wuestefeld told me something, I'd take his word as something I could go with, yes.

Tr. at 9–10.

seizure by which the evidence was obtained was unlawful if the law enforcement officer obtained the evidence in good faith. Subsection (b) of that statute explains that evidence is obtained in good faith if it is obtained pursuant to "a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated." [14] As previously noted, *Litchfield*—which requires articulable suspicion for trash searches—had not been decided at the time of the trash search at issue.[15] Instead, at that time, a different test for the search of trash was being applied by our courts. *See Edwards*, 832 N.E.2d at 1076. In *Moran v. State*, 644 N.E.2d 536, 541 (Ind.1994), *reh'g denied*, our Supreme Court noted that the constitutionality of a trash search should be determined based upon the reasonableness of the search. Of primary importance to the *Moran* Court was the manner in which the trash was seized. The Court recognized, for example, that the police officers did not trespass on the premises to get the trash bags, but collected them from an area approximately a foot from the street, next to the mailbox, where they had been left for pickup by the trash collector. *Id.* at 538, 541. Further, the *Moran* Court observed that the officers did not cause a disturbance because they conducted their activities early in the morning when they were unlikely to be seen. *Id.* at 541. What is more, the officers conducted themselves in the same manner as those whose duty it was to collect the trash. *Id.*

Subsequently, in *Lovell v. State*, 813 N.E.2d 393, 398 (Ind.Ct.App.2004), *trans. denied*, this Court upheld the validity of a search of three trash bags by officers after reviewing the totality of the circumstances to determine the reasonableness of the trash search. There, the trash in question had also been placed next to the mailbox for collection. *Id.* In addition, many of the neighboring residences had bags placed along the street for pickup. *Id.* Moreover, in *Lovell*, the record did not indicate that the officers had to trespass on the defendant's property or disturbed his neighbors in seizing the trash bags. Likewise, in *Mast v. State*, 809 N.E.2d 415, 420–21 (Ind.Ct.App.2004), *reh'g denied, trans. denied*, this Court upheld the search and seizure of the defendant's trash as reasonable under the Indiana Constitution. There, a police officer rode with the defendant's trash carrier when it collected the defendant's trash from a dumpster, on the day previously scheduled for trash removal. *Id.* at 417. The dumpster was located approximately fifteen to twenty feet from the public roadway. *Id.* In Mast, the officer remained in the trash truck during the entire collection process. *Id.*

However, in *State v. Stamper*, 788 N.E.2d 862, 865 (Ind.Ct.App.2003), *abrogated by Litchfield*, another panel of this Court determined, under a set of facts readily distinguishable from those in *Moran*, that the search of the defendant's trash was unreasonable. There, the defendant, while under surveillance by an Indiana State Police Detective, placed a trash bag at the bottom of a garbage pile that was some feet onto his property, near the end of the driveway. In *Stamper*, the evidence revealed that trash collection was not done by a government-run collection service but by the defendant's sister's fian-

---

**14.** Indiana Code Section 35–37–4–5(b)(2) also requires that the law enforcement officer, at the time he or she obtains the evidence, have satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under Indiana Code Section 5–2–1–9. Because Trooper Gill's training is not presently in dispute, we do not examine this subsection.

**15.** The record demonstrates that Trooper Gill searched the Richardsons' trash on August 13, 2003. Yet, *Litchfield* was not decided until March 24, 2005.

cé. Accordingly, this Court held that because the detective had to go onto the defendant's property to collect garbage, which was not normally collected by a public trash collection service, the search was unreasonable. *Id.* at 865.

In light of the case law that existed at the time of the search of the Richardsons' trash, the search in question was not unreasonable and the evidence obtained was properly discovered evidence. Instead, the facts of the present case are very similar to *Moran* and *Mast.* Here, Trooper Gill rode in the trash truck on the day that the Richardsons' trash was scheduled to be collected by their trash collector. The dumpster containing the trash was located on private property but Trooper Gill did not enter the property to seize the trash. Rather, the trash service entered the property to collect the contents of the dumpster, as it is paid by the Richardsons to do, and Trooper Gill, on foot, merely supervised the collection process. Because the search at issue conformed to the prevailing case law at the time, the evidence could not have been properly excluded under Indiana Code Section 35–37–4–5 [16] and, thus, could provide support for the finding of probable cause to issue the warrant to search the Richardsons' house and property.[17]

For the foregoing reasons, we affirm the trial court's denial of the Richardsons' motions to suppress evidence obtained from the warrantless search of their trash.

Affirmed.

BAKER, J., concurs.

NAJAM, J., dissents with separate opinion.

NAJAM, J., dissenting.

I respectfully dissent. The majority opinion misapplies the statutory good faith exception. Indiana Code Section 35–37–4–5 cannot nullify our Supreme Court's holding in *Litchfield,* requiring that a trash search be supported by reasonable suspicion, in this and other cases pending or not yet final when *Litchfield* was decided. Because Trooper Gill did not have reasonable suspicion to support the trash search, I would reverse.

In *Edwards v. State,* 832 N.E.2d 1072 (Ind.Ct.App.2005), we concluded that evidence discovered during a trash search could not be excluded because, under the state of the law as it existed at the time of the search, it was not unreasonable. Thus, we concluded that according to Indiana Code Section 35–37–4–5, the evidence could not have been properly excluded and could provide support for the finding of probable cause to issue a warrant. *Id.* at 1077. I was a member of the panel that decided *Edwards.* But in *Edwards,* we did not consider the fundamental question of whether *Litchfield* supersedes the statutory good faith exception in those cases where, as here, the search straddles an old rule and a new rule. Having now considered the issue, I am convinced that the Richardsons are entitled to the constitutional protection afforded by *Litchfield,* notwithstanding the Indiana good faith statute.

---

16. *See, e.g., State v. Harmon,* 846 N.E.2d 1056 (Ind.Ct.App.2006); *cf. Hopkins v. State,* 582 N.E.2d 345, 351 (Ind.1991) (noting that the federal good-faith exception enunciated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), *reh'g denied,* which was codified in Indiana Code Section 35–37–4–5, has been held applicable to the prohibition of unreasonable search and seizure found in Article 1, Section 11 of the Indiana Constitution), *reh'g denied.*

17. The Richardsons do not contest that, with the evidence obtained from the search of their trash, probable cause existed to support the warrant to search their premises.

"It is firmly established that 'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" *Smylie v. State*, 823 N.E.2d 679, 687 (Ind.2005) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). "A rule is new for the purposes of retroactivity 'if the result was not dictated by precedent existing at the time the defendant's conviction became final.'" *Id.* (quoting *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). Prior to *Litchfield*, "officers were free to search curbside trash willy-nilly[.]" *Turner v. State*, 843 N.E.2d 937, 941 (Ind.Ct.App.2006). In *Litchfield*, our Supreme Court enunciated a new rule and held that "law enforcement officers may only search curbside trash if they have an articulable, individualized suspicion that the trash may contain evidence of criminal conduct." *Id.* "Litchfield represents a significant development in Indiana constitutional law because it prohibits the State from randomly searching and seizing trash containers and holds that there must be an evidentiary foundation for such activity." *Id.* at 942. As we noted in *Turner*, after *Litchfield* "Indiana residents enjoy greater protection from trash searches under Article I, Section 11 than they do under the Fourth Amendment to the United States Constitution." *Id.*

Despite the new standard announced in *Litchfield*, the majority holds that the search of the Richardsons' trash passes constitutional muster even though it was not supported by reasonable suspicion. Specifically, the majority relies on Indiana Code Section 35–37–4–5(b)(1)(B) and concludes that the officers who executed the trash search obtained evidence in good faith because they acted pursuant to a judicial precedent that was later ruled un-constitutional. Therefore, the majority reasons that under the statute the evidence obtained during the trash search cannot be excluded. But the dispositive and overarching issue presented is whether the statutory good faith exception can nullify a retroactive rule of constitutional law announced by our Supreme Court.

The State argues that the exclusionary rule does not apply because Trooper Gill relied in good faith on a facially valid warrant. The State contends that because the exclusionary rule is designed to deter police misconduct, "[it] serves no purpose here." Brief of Appellee at 8. But the State mischaracterizes the issue. The question in this case is not whether the police acted in good faith but whether the Richardsons have recourse to a new rule of substantive constitutional law. To prevail, the Richardsons do not have to allege police misconduct but only have to show that they are entitled to invoke the new rule articulated by our Supreme Court in *Litchfield*.

Today's holding creates several other concerns. First, the good faith exception, as applied here, nullifies our Supreme Court's holding in *Litchfield*. That is, the majority holds that in those cases pending on direct review or not yet final, as long as a police officer conducting a trash search acts in accordance with existing law before *Litchfield*, the good faith exception negates the reasonable suspicion requirement for trash searches and renders the evidence seized admissible. But, as noted above, a new rule for the conduct of criminal prosecutions shall be applied retroactively to all cases pending on direct review or not yet final. *See Smylie*, 823 N.E.2d at 687. A conviction becomes final for purposes of retroactivity analysis when the availability of direct appeal has been exhausted. *Robbins v. State*, 839 N.E.2d 1196, 1199 (Ind.Ct.App.2005) (citation

omitted). Thus, because the Richardsons' case is not yet final, the new constitutional rule announced in *Litchfield* applies in their case, notwithstanding the statutory good faith exception.

Further, today's holding treats similarly situated defendants, the Litchfields and the Richardsons, differently simply because the Litchfields were the lucky defendants whose case was chosen as the vehicle for announcing the new principle. *See Hankerson v. North Carolina*, 432 U.S. 233, 247, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (Powell, J., concurring); *see also Pirnat v. State*, 607 N.E.2d 973, 974 (Ind. 1993). The Richardsons should not be penalized simply because our Supreme Court chose the Litchfields' case to hold that Article I, Section 11 provides more protection than the Fourth Amendment in the area of warrantless trash searches. Retroactive application of a new constitutional rule is an illusion if it can be taken away by statute.

Finally, it is the province of the judiciary to determine the admissibility of evidence. *See Campbell v. Shelton*, 727 N.E.2d 495, 500 (Ind.Ct.App.2000) ("The Indiana Rules of Evidence were adopted by the Indiana Supreme Court on August 24, 1993, and became effective on January 1, 1994."), *trans. denied.* More than 80 years ago, in *Callender v. State*, 193 Ind. 91, 138 N.E. 817, 819 (1922), our Supreme Court adopted an exclusionary rule under Article I, Section 11, which was almost 40 years before the United States Supreme Court made the federal exclusionary rule applicable to the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *See* Randall T. Shepard, *Second Wind for the Indiana Bill of Rights*, 22 Ind. L.Rev. 575, 578–79 (1989). The Indiana exclusionary rule sits on its own constitutional bot-

tom. And because the exclusionary rule is a rule of evidence, a statute cannot divest our Supreme Court of its authority to determine its operation and effect. Indeed, where, as here, a "conflict exists [between a statute and a rule of evidence], the conflicting statute is nullified." *Humbert v. Smith*, 664 N.E.2d 356, 357 (Ind.1996) (citation omitted). "Rules of procedure, including rules of evidence, established by [our Supreme Court] court prevail over any statute." *Harrison v. State*, 644 N.E.2d 1243, 1251 n. 14 (Ind.1995), *superseded in part on other grounds by statute.*

Under the hierarchy of law governing our state, the Indiana Constitution controls a statute to the contrary enacted by the General Assembly. *See* Ind.Code § 1–1– 2–1. In *Litchfield*, our Supreme Court determined that Article I, Section 11 requires an "articulable individualized suspicion" before trash may be searched or seized. *Litchfield*, 824 N.E.2d at 364. And, once more, our Supreme Court has held that a new rule for the conduct of criminal prosecutions which constitutes a "clear break with the past" applies retroactively "with no exception." *Smylie*, 823 N.E.2d at 687. No exception means no exception. In this case, and other cases in the same procedural posture, the statutory good faith exception must yield to Article I, Section 11 of the Indiana Constitution as interpreted by our Supreme Court.[18] Thus, I respectfully dissent.

---

18. It is important to note that the issues presented in this case apply to a narrow class of transitional cases, namely, to those cases pending on direct review or not yet final when *Litchfield* was announced. Eventually, this issue will run its course.