STATE of Indiana, Appellant–Plaintiff,

v.

Gerry Richard HARMON,
Appellee–Defendant.

No. 09A02–0508–CR–789.

Court of Appeals of Indiana.

May 9, 2006.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellant.

Kelly Leeman, Leeman & Burns, Logansport, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Plaintiff, the State of Indiana (the State), appeals from the trial court's grant of Appellee–Defendant's, Gerry Harmon (Harmon), Motion to Suppress.

We reverse.

### ISSUE

The State raises one issue on appeal, which we restate as: Whether the trial court erred in granting Harmon's Motion to Suppress evidence seized from a search of Harmon's home where the basis of the search warrant for his home was evidence seized by an officer's prior, warrantless searches of Harmon's trash.

### FACTS AND PROCEDURAL HISTORY

Indiana State Police Trooper Robert Burgess (Trooper Burgess) received a tip from a confidential informant that illegal drug activity was occurring at Harmon's residence in Cass County, Indiana. Specifically, the informant told Trooper Burgess that he knew various individuals who frequented Harmon's residence and obtained drugs. The informant provided Trooper Burgess with the names of some of these individuals.

As coordinator for the marijuana eradication unit in his district, Trooper Burgess developed a procedure for collecting the garbage left curbside at the residences of individuals suspected of dealing or using illegal drugs. Accordingly, on July 16, 2004, and August 4, 2004, Trooper Burgess went to Harmon's residence and collected the garbage put outside for pick-up on those particular days. In examining both sets of garbage, Trooper Burgess found several items associated with the use and sale of drugs, including a number of plastic bags containing marijuana residue, as well as plastic tubes commonly employed when using methamphetamine.

Following the search of Harmon's trash on August 4, 2004, Trooper Burgess filed a probable cause affidavit to obtain a search warrant for Harmon's residence, which was issued and executed the same day. As a result, on August 9, 2004, the State filed an information charging Harmon with the following: Count I, dealing in methamphetamine, as a Class A felony, Ind.Code § 35–48–4–1; Count II, dealing in marijuana, as a Class D felony, I.C. § 35–48–4–10; Counts III and IV, possession of a controlled substance, Class D felonies, I.C. § 35–48–4–7; and Count V, possession of paraphernalia, a Class A misdemeanor, I.C. § 35–48–4–8.3. On August 31, 2004, the State filed an amended information, adding a second count of dealing in methamphetamine, as a Class B felony.

On April 6, 2005, Harmon filed a Motion to Suppress the evidence seized from the search of his home, arguing that such evidence was obtained as a result of an illegal search of his trash. On May 6, 2005, the trial court conducted a hearing on the motion, and subsequently granted the motion on May 11, 2005. On May 17, 2005,

the State filed a Motion to Reconsider, which was denied on May 25, 2005.

The State now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

The State argues that the trial court improperly granted Harmon's Motion to Suppress evidence gathered from Harmon's residence because Trooper Burgess relied in good faith on a search warrant for the residence. On the other hand, Harmon argues, and the trial court agreed, that the evidence seized from Harmon's residence must be suppressed under the fruit of the poisonous tree doctrine, as it was the result of an illegal trash search.

We review a trial court's ruling on a motion to suppress in a manner similar to claims challenging the sufficiency of the evidence. *State v. Ritter*, 801 N.E.2d 689, 691 (Ind.Ct.App.2004), *trans. denied.* We will examine the evidence most favorable to the ruling together with any uncontested evidence favorable to the defendant. *Id.* We neither reweigh evidence nor judge witness credibility. *Id.*

Article I, Section 11 of the Indiana Constitution reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Crook v. State*, 827 N.E.2d 643, 645 (Ind.Ct.App.2005). The "totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* "Thus, reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.*

This court has previously addressed the warrantless search and seizure of curbside trash by law enforcement officials. In *Crook*, we reversed a trial court's denial of a motion to suppress evidence seized from Crook's residence after officers, including Trooper Burgess, conducted an unwarranted search of Crook's trash. *Crook*, 827 N.E.2d at 646. While Harmon's trash was searched following a meeting with a confidential informant, an anonymous telephone call to police prompted the search of Crook's trash. *Id.*

In *Litchfield v. State*, 824 N.E.2d 356, 363 (Ind.2005), our supreme court stated that while the seizure of trash in its usual location for pickup is no intrusion on an owner's liberty or property interests, "it is not reasonable for law enforcement to search indiscriminately through people's trash." Rather, our supreme court concluded that the search of trash recovered from the place where it is left for collection is permissible under the Indiana Constitution only if the investigating officials have an articulable basis justifying reasonable suspicion that the subject of the search has engaged in violations of law that might reasonably lead to evidence in the trash. *Id.; Crook v. State*, 827 N.E.2d 643, 646 (Ind.Ct.App.2005). Accordingly, it is now settled that a search of an individual's trash requires the following: (1) the trash must be retrieved in substantially the

same manner as the trash collector would use; and (2) the officer must possess a reasonable, articulable suspicion, "essentially the same as is required for a 'Terry stop' of an automobile." *Edwards v. State,* 832 N.E.2d 1072, 1075 (Ind.Ct.App.2005).

However, prior to the issuance of *Litchfield,* the prevailing case law on trash pulls was found in our supreme court's decision in *Moran v. State,* 644 N.E.2d 536 (Ind. 1994), which held that the constitutionality of a trash search should be based upon the reasonableness of the search. In upholding the search at issue in *Moran,* the court found that the police officers did not trespass onto Moran's property or cause any disturbance in their retrieval of the trash bags. *Id.* at 541.

In addition, this court addressed the warrantless search and seizure of curbside trash by law enforcement officials in both *Crook* and *Edwards.* In *Crook,* a police officer conducted a warrantless search of the defendant's trash after receiving an anonymous telephone call relaying that the defendant was involved in illegal drug activity. *Crook,* 827 N.E.2d at 644. Citing *Litchfield's* requirement of an articulable, individualized suspicion and noting that as a general rule, an anonymous tip is not enough to constitute the reasonable suspicion necessary for a valid *Terry* stop, we reversed the trial court's denial of Crook's motion to suppress. *Crook,* 827 N.E.2d at 646. Therefore, despite the fact that *Litchfield* had not yet been issued when officers searched Crook's trash, we determined that the trash search was illegal because the officers did not possess the requisite reasonable suspicion; consequently, we concluded that the subsequent search of Crook's home, based on evidence collected from his trash, was also illegal. *Id.*

On the other hand, in *Edwards v. State,* a case involving another pre-*Litchfield* pull of a defendant's trash, we determined that the exclusionary rule did not apply because officers obtained the evidence in good faith reliance on prevailing law. *Edwards,* 832 N.E.2d at 1076. Unlike *Crook,* in *Edwards* we addressed the fact that at the time the officer searched the defendant's trash, *Moran*—not *Litchfield*—was the prevailing case law. In addition, we specifically found that under Ind.Code § 35–37–4–5, evidence is obtained in good faith if it is obtained pursuant to a "state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated." *Edwards,* 832 N.E.2d at 1076. Therefore, even though we found the basis of the trash search, a tip from a confidential informant, to be inadequate to support the reasonable suspicion necessary under *Litchfield,* we concluded that the search was reasonable under the law at the time because the officers made no disturbance and did not trespass on the premises to get the trash, which was left in its usual place for pickup. *Edwards,* 832 N.E.2d at 1076–77.

In evaluating and balancing the conflicting outcomes in *Crook* and *Edwards,* we find the facts of the case before us more representative of those in *Edwards.* As in *Edwards,* the record here indicates that a tip from a confidential informant led Trooper Burgess to collect Harmon's trash on two separate occasions. The record also shows that each time Trooper Burgess collected the trash, he did so in substantially the same manner as a trash collector, without trespassing onto Harmon's property or causing any sort of disturbance. Additionally, at the time Officer Burgess searched Harmon's trash, *Litchfield* was not available to him as precedent. Thus, in light of the State's good faith argument presented here, as it was presented in *Edwards,* we find that Trooper Burgess conducted the search of Harmon's trash in

a manner consistent with applicable case law at the time. Consequently, we further conclude that in searching Harmon's home, Officer Burgess relied in good faith upon a valid search warrant issued as a result of the discovery of items associated with illegal drug use in a reasonable search of Harmon's trash. Accordingly, we conclude that the trial court erred in granting Harmon's Motion to Suppress.

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred in suppressing the evidence seized from Harmon's residence.

Reversed.

SHARPNACK, J., and BARNES, J., concur.