George **MEMBRES III**, Appellant–Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A02–0511–CR–1065.

Court of Appeals of Indiana.

July 31, 2006.

Rehearing Denied Oct. 13, 2006.

Robert W. Hammerle, Steven D. Allen, Joseph M. Cleary, Hammerle & Allen, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Chief Judge.

George Membres III appeals the trial court's order, finding that the seizure of his property was done pursuant to a lawful search, and therefore, the property was subject to be turned over to federal authorities. He raises two issues, of which we find one dispositive: whether the police had articulable, individualized suspicion of criminal activity prior to searching Membres' trash.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In March 2005, Deputy Scott Wildauer of the Marion County Sheriff's Department was assigned to the Safe Streets Task Force, which was a joint task force with the FBI, Indianapolis Police Department, and the Speedway Police Department. Deputy Wildauer's responsibilities with the task force included narcotics investigations. At that time, he was involved in an ongoing investigation into possible drug trafficking at 5103 North Flame

Way in Indianapolis, which was the residence of Membres. During the investigation, Deputy Wildauer received information from a confidential informant who was "pretty sure" that Membres was selling marijuana out of his residence. *Tr.* at 19. The informant told Deputy Wildauer that Membres was dealing large quantities of marijuana, and the informant suspected it was in excess of twenty pounds. *Id.* Deputy Wildauer had used this informant in the past at least forty to fifty times, and although he could not recall exactly how many convictions resulted from the information supplied by the informant, he believed that it was more than three convictions. *Id.* at 17. Additionally, a vehicle associated with another drug dealer under investigation by Deputy Wildauer had been seen at Membres's residence. *Id.* at 18.

Based on this information, Deputy Wildauer searched Membres' trash on March 9, 2005. He recovered the trash bags on the normal day for trash collection and without stepping onto Membres' property. Deputy Wildauer's search of the four trash bags taken from Membres' residence yielded twenty-five burnt ends of marijuana cigarettes, loose green vegetation suspected to be marijuana, four plastic baggies with the corners torn off,[1] and empty packages of rolling papers. Mail addressed to Membres at the Flame Way address was also recovered from the trash. Based on the evidence found in Membres' trash, the State obtained a search warrant and a search of Membres' residence was performed on March 10, 2005. During the search, the police found marijuana, $57,060 in cash, a large amount of jewelry, and four firearms.

On April 5, 2005, the State filed a motion for a turnover order under IC 35–33–5–5(j), which would authorize the transfer of the $57,060, the jewelry, and the firearms to federal authorities, and the order was signed by the trial court. Membres moved for a stay of that order and to suppress the evidence. The trial court granted a stay of the turnover order, and a suppression hearing was held on May 27, 2005. On September 16, 2005, the trial court denied Membres' motion to suppress and further ordered a stay on the turnover order to allow Membres to pursue an appeal. At this time, no criminal charges have been filed against Membres. He now appeals.

## DISCUSSION AND DECISION

■ Our standard of review for the denial of a motion to suppress is well settled. We review such rulings in a similar manner to other sufficiency matters. *Carroll v. State*, 822 N.E.2d 1083, 1085 (Ind.Ct.App.2005). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the ruling. *Id.* However, unlike typical sufficiency reviews where only the evidence favorable to the judgment is considered, we must also review the uncontested evidence that is favorable to the defendant. *Id.*

Membres argues that the trial court erred in denying his motion to suppress the evidence from the search of his home. He specifically contends that his rights under Article I, Section 11 of the Indiana Constitution were violated because Deputy Wildauer searched through his trash without reasonable suspicion.

■ Article I, Section 11 reads as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or

---

1. Deputy Wildauer testified that through his training and experience he knew that these plastic baggies were used to package narcotics. *Tr.* at 20.

seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

"The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005). In *Litchfield*, our Supreme Court held that it is not reasonable for the police to search indiscriminately through people's trash. *Id.* at 363. In order for a search or seizure of a person's trash to be reasonable, two requirements must be met. First, the trash must be retrieved in substantially the same manner as the trash collector would use. *Id.* at 363. Second, the officer must possess an articulable, individualized suspicion, essentially the same as that required for a "Terry stop" of an automobile. *Id.* at 364.

█ Here, there is no dispute that the trash was placed along the street for pickup by the trash collector. There is, however, a question as to whether Deputy Wildauer had reasonable suspicion to search Membres' trash. If Deputy Wildauer did not have reasonable suspicion to search the trash, he could not legally have found the marijuana evidence in the trash and could not have used that evidence to establish probable cause for the search warrant of Membres' residence.

In this case, Deputy Wildauer received information from a confidential informant that the informant had seen another suspected drug dealer at Membres' residence and that the informant was "pretty sure they were selling marijuana" out of Membres' residence. *Tr.* at 19. The informant did not specify a quantity of marijuana, but did tell Deputy Wildauer that he sus-

pected it was in excess of twenty pounds. *Id.* Deputy Wildauer testified that he had used this informant in the past more than forty to fifty times, but he could not remember exactly how many convictions had resulted from the past information. *Id.* at 17. He stated that he believed that it was more than three. *Id.* at 17–18. Additionally, Deputy Wildauer had previously never used this informant as a basis for a search warrant.

The informant did not provide any information regarding a specific, impending crime or any information that could be corroborated by the police. There was no time frame on the information given by the informant. The information was not based on any observations of criminal activity by the informant; he only told Deputy Wildauer that he was "pretty sure" that Membres was dealing marijuana in an unknown quantity in excess of twenty pounds. The informant only provided his suspicions on the criminal activity occurring at Membres' residence. Further, although Deputy Wildauer testified that the informant was credible and reliable and had provided information over forty to fifty times in the past, it was unclear how many times the information had resulted in convictions, only that he believed it was more than three. Deputy Wildauer's testimony was not sufficient to establish the credibility of the informant. Although he stated that he had used the informant forty to fifty times, he had never used the informant as the basis for a search warrant, and the information had led to convictions only on an unspecified number which Deputy Wildauer believed was more than three. The only conclusion that can be drawn is that the informant was shown to be credible some number of times more than three, out of forty or fifty. We are left to speculate about the credibility of the informant on all the other occasions. While no pre-

cise credibility ratio need be shown, providing credible information three or more times out of forty or fifty is not sufficient. We therefore conclude that the information given by the informant was lacking in indicia of reliability, and the credibility of the informant was not established. The information was not sufficient to support the articulable, individualized suspicion required to conduct a search of Membres' trash.

■■■■ The State argues that the search warrant was executed in "good faith." The good faith exception allows courts to admit evidence that has been illegally seized if the police acted in "objective good faith." *Caudle v. State*, 749 N.E.2d 616, 620 (Ind.Ct.App.2001), *trans. denied*. An objective standard is utilized to determine whether evidence is admissible when seized by virtue of a search warrant that was issued by a detached and neutral magistrate but later determined to lack probable cause. *State v. Mason*, 829 N.E.2d 1010, 1019 (Ind.Ct.App.2005). The good faith exception, however, does not apply where the warrant is based upon false information knowingly or recklessly supplied by an affiant or if the supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id.*

In this case, the information provided to Deputy Wildauer by the confidential informant was not sufficient to support an articulable, individualized suspicion of criminal activity. The information given was of the informant's suspicions of criminal activity occurring at Membres' residence and not on any observations of actual drug activity. There were also no facts that set forth what Deputy Wildauer did to corroborate the information given by the informant. We conclude that because the informant's tip so lacked the indicia of reliability and credibility, Deputy Wil-

dauer could not have had a good faith reliance on this information to support the search of Membres' trash and, later, the affidavit for probable cause. The good faith exception therefore does not apply, and the trial court erred in denying Membres' motion to suppress. Because the property subject to the transfer order was not obtained pursuant to a lawful search, we remand to the trial court to vacate the turnover order and return the property.

Reversed and remanded.

CRONE, J., concurs.

BAILEY, J., dissents with separate opinion.

BAILEY, Judge, dissenting.

I respectfully dissent from the majority's determination that the good faith exception to the exclusionary rule is inapplicable to the trash search in question and that, as a result, the property subject to the transfer order—i.e., the $57,060.00, jewelry, and firearms—was not obtained pursuant to a lawful search. Even assuming arguendo that the police lacked a reasonable, articulable suspicion for seizing Membres's trash and that, as a consequence, the trash pull did not meet the constitutional requirements of *Litchfield v. State*, 824 N.E.2d 356, 363–64 (Ind.2005), the evidence is still admissible under the good faith exception as codified in Indiana Code Section 35–47–4–5. *See, e.g., Richardson v. State*, 848 N.E.2d 1097, 1103–04 (Ind.Ct.App.2006).

Indiana Code Section 35–47–4–5 provides that, in a prosecution for a crime, a court *may not* grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the law enforcement officer obtained the evidence in good faith. Ind.Code § 35–47–4–5. Subsection (b) of that statute explains that evidence is ob-

tained in good faith if it is obtained pursuant to "a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated."[2] As noted by the majority, *Litchfield*—which requires articulable suspicion for trash searches—had not been decided at the time of the trash search at issue.[3] Instead, at that time, a different test for the search of trash was being applied by our courts. *See Edwards v. State*, 832 N.E.2d 1072, 1076 (Ind.Ct.App.2005). In *Moran v. State*, 644 N.E.2d 536, 541 (Ind.1994), *reh'g denied*, our Supreme Court noted that the constitutionality of a trash search should be determined based upon the reasonableness of the search. Of primary importance to the *Moran* Court was the manner in which the trash was seized. The Court recognized, for example, that the police officers did not trespass on the premises to get the trash bags, but collected them from an area approximately a foot from the street, next to the mailbox, where they had been left for pickup by the trash collector. *Id.* at 538, 541. Further, the *Moran* Court observed that the officers did not cause a disturbance because they conducted their activities early in the morning when they were unlikely to be seen. *Id.* at 541. What is more, the officers conducted themselves in the same manner as those whose duty it was to collect the trash. *Id.*

Subsequently, in *Lovell v. State*, 813 N.E.2d 393, 398 (Ind.Ct.App.2004), *trans. denied*, this Court upheld the validity of a search of three trash bags by officers after reviewing the totality of the circumstances to determine the reasonableness of the

trash search. There, the trash in question had also been placed next to the mailbox for collection. *Id.* In addition, many of the neighboring residences had bags placed along the street for pickup. *Id.* Moreover, in *Lovell*, the record did not indicate that the officers had to trespass on the defendant's property or disturb his neighbors in seizing the trash bags. Likewise, in *Mast v. State*, 809 N.E.2d 415, 420–21 (Ind.Ct. App.2004), *reh'g denied, trans. denied*, this Court upheld the search and seizure of the defendant's trash as reasonable under the Indiana Constitution. There, a police officer rode with the defendant's trash carrier when it collected the defendant's trash from a dumpster, on the day previously scheduled for trash removal. *Id.* at 417. The dumpster was located approximately fifteen to twenty feet from the public roadway. *Id.* In *Mast*, the officer remained in the trash truck during the entire collection process. *Id.*

However, in *State v. Stamper*, 788 N.E.2d 862, 865 (Ind.Ct.App.2003), *abrogated by Litchfield*, another panel of this Court determined, under a set of facts readily distinguishable from those in *Moran*, that the search of the defendant's trash was unreasonable. There, the defendant, while under surveillance by an Indiana State Police Detective, placed a trash bag at the bottom of a garbage pile that was some feet onto his property, near the end of the driveway. In *Stamper*, the evidence revealed that trash collection was not done by a government-run collection service but by the defendant's sister's fiancé. Accordingly, this Court held that be-

---

**2.** Indiana Code Section 35–37–4–5(b)(2) also requires that the law enforcement officer, at the time he or she obtains the evidence, have satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under Indiana Code Section 5–2–1–9. Because

Deputy Wildauer's training is not presently in dispute, we do not examine this subsection.

**3.** The record demonstrates that Deputy Wildauer searched Membres's trash on March 9, 2005. Yet, *Litchfield* was not decided until March 24, 2005.

cause the detective had to go onto the defendant's property to collect garbage, which was not normally collected by a public trash collection service, the search was unreasonable. *Id.* at 865.

In light of the case law that existed at the time of the search of Membres's trash, the search in question was not unreasonable and the evidence obtained was properly discovered evidence. Indeed, the facts of the present case are very similar to *Moran* and *Mast.* Here, without entering onto Membres's property, Deputy Wildauer collected the four trash bags at issue, which were located by the mailbox and curb. In addition, the officer pulled the trash on the normal day for Membres's trash collection. Because the search at issue conformed to the prevailing case law at the time, the evidence could not have been properly excluded under Indiana Code Section 35–37–4–5 and, thus, could provide support for the finding of probable cause to issue the warrant to search Membres's residence.

For these reasons, I dissent with the majority opinion.