**Ralph BELVEDERE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 48A05–0611–CR–669.**

Court of Appeals of Indiana.

Oct. 23, 2007.

---

Christopher A. Cage, Anderson, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Ralph Belvedere appeals his convictions for Possession of Marijuana With Intent to Deal, as a Class C felony, and Maintaining a Common Nuisance, a Class D felony, following a jury trial. Belvedere raises three issues for our review, which we restate as:

1. Whether our Supreme Court's recent decision in *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005), applies and prohibits the introduction of evidence at trial that was obtained following a police search of Belvedere's trash.

2. Whether the good faith doctrine can be applied to that trash search.

We reverse.

### FACTS AND PROCEDURAL HISTORY

On May 18, 2004, Anderson Police Department Detective Kevin Earley "was contacted by a source" regarding "a [white male] by the name of Ralph" at 2807 Morton Street and 2807½ Morton Street in Anderson. Def. Exh. C at 3–4. The two addresses were located on a single piece of property. The 2807½ Morton Street address, an upstairs apartment, was accessed from the rear of the house at 2807 Morton Street. A mobile home was also on that property. The source told Detective Earley that he or she "ha[d] been in the [apartment] approximately two days before ... and saw two pounds of marijuana," *id.* at 4, 6–7, although the source

"believed that the house was vacant," *id.* at 6. The source also stated that he or she, "within the last few months, saw up to ten pounds of marijuana" at the apartment. *Id.*

On May 19, 2004, Detective Earley placed "[s]urveillance on the house and also conducted a trash pull." *Id.* Detective Earley "retrieved the trash sitting in the alley way [sic] behind 2807 ½ Morton. It was one trash bag that was out and one trash bag taken that contained . . . seeds, stems and a small amount of plant material that field tested positive for marijuana." *Id.* Detective Earley also found mail in that trash addressed to Ralph Belvedere at 2807½ Morton Street.

Detective Earley then inquired with the local utilities company regarding the addresses. He was informed that the 2807 Morton Street address was likely vacant, although the 2807½ address seemed occupied. Detective Earley also confirmed Belvedere's identity at that location after he performed a license check on a truck parked in the property's driveway.

On May 20, Earley requested and received a search warrant for the house and the apartment based on "the source's tips . . ., the trash pull . . ., the utility records, [and] the license checks." *Id.* at 8. That same day, police executed the warrant and found five people inside the apartment, including Belvedere. The officers recognized the smell of burning marijuana and, after finding a container filled with marijuana in the apartment, officers arrested Belvedere.

On June 10, 2004, the State charged Belvedere with possession of marijuana with intent to deal, as a Class C felony, and maintaining a common nuisance, a Class D felony. Prior to trial, Belvedere moved to suppress the evidence police seized from his trash and the evidence seized from his apartment pursuant to the warrant. The trial court denied Belvedere's motion, and, during his trial, Belvedere objected to the introduction of "any observations or evidence collected" as a result of both the trash pull and the resulting search of his apartment. Transcript at 184, 191. The court overruled Belvedere's objections. The State presented no other evidence against Belvedere, and, on July 14, 2006, the jury convicted him as charged. The trial court then sentenced Belvedere to a total of six years probation. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Belvedere contends that the trial court erred when it permitted the introduction of evidence seized from Detective Earley's trash pull and the subsequent warrant that was issued on the basis of evidence found in that trash pull. As Belvedere is challenging the admission of evidence following his conviction rather than in an interlocutory appeal, the issue is whether the trial court abused its discretion by admitting the evidence at trial. *Bentley v. State*, 846 N.E.2d 300, 304 (Ind.Ct.App.2006), *trans. denied.* A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

■ As an initial matter, the issues Belvedere raises on appeal, and the State's responses, revolve around the proper law to be applied to Detective Earley's May 2004 trash search. At the time of that search, Article I, Section 11 of the Indiana

Constitution [1] allowed police to search trash indiscriminately, so long as the manner of the search was reasonable. *See Moran v. State*, 644 N.E.2d 536, 541 (Ind. 1994). However, on March 24, 2005, subsequent to Detective Earley's trash search but before Belvedere's case became final, our Supreme Court announced *Litchfield*. In *Litchfield*, our Supreme Court changed Indiana's constitutional jurisprudence, holding in relevant part that "a requirement of articulable individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile," imposes the appropriate constitutional standard in trash searches. *Litchfield*, 824 N.E.2d at 364.

Thus, on appeal Belvedere maintains that *Litchfield* must apply retroactively and without exception. On the other hand, the State contends that *Litchfield* does not apply retroactively or, in the alternative, that an exception applies to Detective Earley's search. The latter issue, in particular, has led to a diversity of opinions from this court. We address each argument in turn.

### Issue One: Retroactivity of *Litchfield*

■ Belvedere first maintains Detective Earley's search was unconstitutional under *Litchfield*. The State responds by arguing that "pre-*Litchfield* law still governs this case." Appellee's Brief at 8. We must agree with Belvedere.

■ As our Supreme Court has held, "[i]t is firmly established that[ ] 'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" *Smylie v. State*, 823 N.E.2d 679, 687 (Ind.2005) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). In *Griffith*, the Supreme Court of the United States reached that holding by reasoning, in part, that it "hardly comports with the ideal of administration of justice with an even hand[ ] when one chance beneficiary—the lucky individual whose case was chosen as the occasion for announcing the new principle—enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine." *Griffith*, 479 U.S. at 327, 107 S.Ct. 708 (quotations omitted). Both *Griffith* and *Smylie* involved the retroactive application of a new rule of federal constitutional law.

Similarly, our Supreme Court has held that a new rule of evidence applies retroactively to all criminal prosecutions in which that issue was "properly preserved ... [and the case was] pending on direct appeal" at the time the new rule was announced. *Pirnat v. State*, 607 N.E.2d 973, 974 (Ind.1993). In so holding, our Supreme Court determined that those defen-

1. Article I, Section 11 of the Indiana Constitution provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." As our Supreme Court has stated:
 Although this language tracks the Fourth Amendment [of the United States Constitution] verbatim, Indiana has explicitly rejected the expectation of privacy [test under the U.S. Constitution] as a test of the reasonableness of a search or seizure [under the Indiana Constitution]. The legality of a

 governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Moran v. State*, 644 N.E.2d 536, 539 (Ind.1994).... We believe that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure.

 *Litchfield*, 824 N.E.2d at 359.

dants should "receive the benefit of review under the new rule for the basic reason that they ought not be penalized merely because we chose another pending case as the vehicle for announcing the change." *Id.*

The State maintains that our Supreme Court's declaration in *Smylie* is not applicable here because "[b]oth *Griffith* and *Smylie* were concerned with the application of a new rule of federal criminal procedure ... [and not] a state constitutional issue." Appellee's Brief at 8–9. We recognize that our Supreme Court has not explicitly stated whether it believes the *Griffith* retroactivity rule should apply to new rules of criminal procedure developed under the Indiana Constitution. Nonetheless, our Supreme Court has recognized, for the same reasons as the *Griffith* Court, a nearly identical rule for the retroactive application of new rules of evidence. We see no reason why the retroactivity standard applicable to a new rule of Indiana constitutional law should be any different than the retroactive application of a new Indiana rule of evidence. *See, e.g., Turner v. State,* 843 N.E.2d 937, 943 n. 2 (Ind.Ct. App.2006).

In the specific context of the retroactive application of *Litchfield,* our Supreme Court has consistently, albeit without discussion of retroactivity, applied *Litchfield* to cases not yet final when *Litchfield* was decided. *See, e.g., Holder v. State,* 847 N.E.2d 930, 940–41 (Ind.2006) (holding, without discussion of retroactivity, that a

warrantless search of defendant's property on January 14, 2003, did not violate the Indiana Constitution under the *Litchfield* analysis); *Trimble v. State,* 842 N.E.2d 798, 803–04 (Ind.2006) (same for February 2003 search); *Myers v. State,* 839 N.E.2d 1146, 1152–54 (Ind.2005) (same for March 14, 2002, search). This court has done the same. *See, e.g., Richardson v. State,* 848 N.E.2d 1097, 1105 (Ind.Ct.App.2006), *trans. denied; State v. Harmon,* 846 N.E.2d 1056, 1059–60 (Ind.Ct.App.2006), *trans. denied; Turner,* 843 N.E.2d at 943 n. 2; *Edwards v. State,* 832 N.E.2d 1072, 1077 (Ind.Ct.App.2005); *Crook v. State,* 827 N.E.2d 643, 646 (Ind.Ct.App.2005).[2]

Thus, *Litchfield* applies to all cases "pending on direct review or not yet final, with no exception," at the time *Litchfield* was decided. *See Smylie,* 823 N.E.2d at 687; *Pirnat,* 607 N.E.2d at 974. Here, it is undisputed that Belvedere's case was "not yet final" when our Supreme Court announced *Litchfield. See Smylie,* 823 N.E.2d at 687. And, again, *Litchfield* announced a new rule of constitutional law as it relates to criminal prosecutions. *See Turner,* 843 N.E.2d at 942. It is also not disputed that Belvedere properly preserved this issue for our review. Thus, *Litchfield* must be applied to Belvedere's case.

 Detective Earley's search of Belvedere's trash violated the Indiana Constitution under *Litchfield.* Again, in order for Detective Earley to conduct a lawful search, he needed to have an "articulable

**2.** In addition, this court, without analysis, applied *Litchfield* retroactively in two cases in which our Supreme Court recently granted transfer. *See Bowles v. State,* 867 N.E.2d 242, 251–52 (Ind.Ct.App.2007), *trans. granted; Membres v. State,* 851 N.E.2d 990, 994 (Ind. Ct.App.2006), *trans. granted.* "Upon granting the petition to transfer, the decision of the Court of Appeals is deemed vacated and held for naught." *McGowan v. State,* 674 N.E.2d 174, 175 (Ind.1996). However, our Supreme Court has not yet issued an opinion in either of those cases. As such, our discussion of *Bowles* and *Membres* does not mean that we give those opinions any precedential value. Rather, we mention those opinions merely to give context to the legal framework on the issues raised by the facts of the instant case. *See, e.g., Bd. of Sch. Trs. v. Barnell by Duncan,* 678 N.E.2d 799, 804 n. 2 (Ind.Ct.App.1997).

individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile." [3] *Litchfield,* 824 N.E.2d at 364. Where a tip from a confidential informant is "completely lacking in indicia of reliability and the record offers no evidence that the confidential informant was reliable[,] the tip [is] ... inadequate to support [such] an investigatory stop." *Johnson v. State,* 659 N.E.2d 116, 119 (Ind. 1995).

Here, Detective Earley's search of Belvedere's trash was based exclusively on information Detective Earley had received from a confidential "source." *See* Def. Exh. C at 3–4. However, that tip was completely lacking in indicia of reliability. The source merely identified Belvedere's race, gender, and residence, and that he or she believed the house below Belvedere's apartment to be vacant. But that information was easily knowable by many members of the general public and therefore is not indicative of the informant's reliability. *See Jaggers v. State,* 687 N.E.2d 180, 183 (Ind.1997) ("If any anonymous caller's allegation, uncorroborated by anything beyond public knowledge, could justify a search, every citizen's home would be fair game for a variety of innocent and not so innocent intrusions."); *Johnson,* 659 N.E.2d at 119. The informant also stated that he or she had been inside Belvedere's apartment and had seen various amounts of marijuana. However, the informant failed to provide Detective Earley with several important pieces of information, most notably details of future acts by Belvedere, that would demonstrate the informant's knowledge of Belvedere's activities and provide officers "the tools with which to verify [the tip's] dependability." *See Johnson,* 659 N.E.2d at 118–19.

In light of the record here, we must conclude that "the tip in this case was completely lacking in indicia of reliability and the record offers no evidence that the confidential informant was reliable; the tip was, therefore, inadequate to support an investigatory stop." *Id.* at 119. Thus, Detective Earley's rationale for searching Belvedere's trash did not rise to the level of an "articulable individualized suspicion, essentially the same as is required for a 'Terry stop' of an automobile." *See Litchfield,* 824 N.E.2d at 364. Accordingly, that search violated Belvedere's rights under the Indiana Constitution and all evidence derived from that illegal search, including that evidence obtained pursuant to the subsequent search warrant, must be suppressed unless an exception to the exclusionary rule can be applied. *See id.; Johnson,* 659 N.E.2d at 120.

**Issue Two: Good Faith Exception**

Even though Belvedere's rights under the Indiana Constitution were violated, the evidence gathered from Detective Earley's search of Belvedere's trash may be admissible if obtained in good faith. The good faith exception to Indiana's constitutional prohibitions on evidence resulting from an illegal search or seizure has two components, a constitutional component and a statutory component. *See Hopkins v. State,* 582 N.E.2d 345, 351 (Ind.1991); *see also* Ind.Code § 35–37–4–5 (2004) ("good faith statute"). The State maintains that both apply here.

While there has been consensus, even if not explicit, that *Litchfield* applies retroactively, the same cannot be said for application of the good faith doctrine in such circumstances. Specifically, this court has split on whether suppression of the evidence is necessary when an officer has relied in good faith on a search warrant

---

**3.** There is no dispute that Detective Earley retrieved Belvedere's trash in substantially the same manner as a trash collector. *See Litchfield,* 824 N.E.2d at 363.

that was based on evidence from a pre-*Litchfield* trash search. For example, one panel of this court has held that an officer's reliance on such a warrant did not satisfy the constitutional aspect of good faith. *Membres v. State*, 851 N.E.2d 990, 994 (Ind.Ct.App.2006), *trans. granted.* That opinion did not discuss the good faith statute. *See id.* at 994–96 (Bailey, J., dissenting). And another panel has held that the good faith doctrine could not be applied because the defendant had "a right to invoke a new constitutional rule promulgated by our [S]upreme [C]ourt." *Turner*, 843 N.E.2d at 943 n. 2 (discussing *Smylie*, 823 N.E.2d at 687).

But other panels of this court have also held that the good faith doctrine does apply to evidence seized from a pre-*Litchfield* trash search. For example, one panel has held that, although *Litchfield* applied retroactively, the policies underlying the exclusionary rule demonstrated that that rule did not require suppression of the illegally seized evidence. *Bowles v. State*, 867 N.E.2d 242, 251–52 (Ind.Ct. App.2007), *trans. granted.* And other panels have held that the good faith statute permits that evidence to be admitted at trial. *See Richardson*, 848 N.E.2d at 1105; *Harmon*, 846 N.E.2d at 1059–60; *Edwards*, 832 N.E.2d at 1077.

Because we hold that *Litchfield* must apply retroactively, we likewise hold that any application of the good faith doctrine must take into account the constitutional standards announced in *Litchfield.* To hold otherwise would deny Belvedere his right "to invoke a new constitutional rule promulgated by our [S]upreme [C]ourt." *See Turner*, 843 N.E.2d at 943 n. 2; *see also Pirnat*, 607 N.E.2d at 974. Nonetheless, as various panels of this court have approached this issue differently, we address the application of constitutional and statutory aspects of the good faith doctrine.

### Constitutional Good Faith

Indiana's constitutional good faith exception to the exclusionary rule is identical to the federal exception announced by the Supreme Court of the United States in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See Hopkins*, 582 N.E.2d at 351. Under the constitutional good faith exception, suppression of evidence under the exclusionary rule is appropriate only if: (1) the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate wholly abandoned his neutral judicial role; (3) the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923, 104 S.Ct. 3405. That is, the good faith doctrine under the Indiana Constitution permits courts to admit evidence that has been illegally seized when the police acted in "objective good faith." *See Leon*, 468 U.S. at 907–08, 104 S.Ct. 3405. Accordingly, the State maintains that the application of "the exclusionary rule ... serves no purpose here." Appellee's Brief at 9–10.

We cannot agree with the State. Indeed, in *Griffith*, the Supreme Court of the United States expressly rejected the position that a change in federal constitutional law should not be applied to similarly situated defendants in other cases. Specifically, that Court held that new rules of federal constitutional law apply retroactively "with no exception for cases in which the new rule constitutes a 'clear break' with

the past." *Griffith,* 479 U.S. at 327–28, 107 S.Ct. 708; *accord Pirnat,* 607 N.E.2d at 974. As such, the State's position that the exclusionary rule does not apply mischaracterizes the issue. The question is not whether the police acted in good faith, but whether Belvedere has recourse to a new rule of substantive constitutional law. *See Turner,* 843 N.E.2d at 943 n. 2; *see also Richardson,* 848 N.E.2d at 1105–07 (Najam, J., dissenting). That is, the State's argument ignores the retroactive effect of *Litchfield.*

Agreeing with the State, the dissent maintains that "we should [not] negate . . . a textbook application of the good faith exception so that a question of retroactivity is rendered relevant." Slip op. at 1 n. 1. Rather, "even though any pre-*Litchfield, Moran*-compliant trash pull unsupported by reasonable suspicion would run afoul of Article I, Section 11, the fruits of the pull would *always* be admissible by virtue of the good faith exception." *Id.* The dissent also asserts that *Leon* is inapposite as it was a search-warrant case. In its place, the dissent proffers *State v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

Relying on *DeFillippo* and maintaining that the good faith exception trumps the prevailing substantive rules of constitutional law ignores the rule of retroactivity announced in *Griffith.* Specifically, in *Leon* the Supreme Court discussed *DeFillippo* as follows:

> The same attention to the purposes underlying the exclusionary rule also has characterized decisions not involving the scope of the rule itself. We have not required suppression of the fruits of a search incident to an arrest made in good-faith reliance on a substantive criminal statute that subsequently is declared unconstitutional. *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627,

61 L.Ed.2d 343 (1979). Similarly, although the Court has been unwilling to conclude that new Fourth Amendment principles are always to have only prospective effect, *United States v. Johnson,* 457 U.S. 537, 560, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), no Fourth Amendment decision marking a "clear break with the past" has been applied retroactively. *See United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The propriety of retroactive application of a newly announced Fourth Amendment principle, moreover, has been assessed largely in terms of the contribution retroactivity might make to the deterrence of police misconduct. *United States v. Johnson, supra,* at 560–561, 102 S.Ct. 2579; *United States v. Peltier, supra,* at 536–539, 542, 95 S.Ct. 2313.

*Leon,* 468 U.S. at 911–13, 104 S.Ct. 3405 (footnotes omitted). But again, in the subsequently decided *Griffith* opinion, the Supreme Court clearly backed off that language, holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith,* 479 U.S. at 328, 107 S.Ct. 708. Thus, insofar as *DeFillippo* supports the proposition that we should ignore the retroactive effect of *Litchfield,* that position is inconsistent with the Supreme Court's subsequent opinion in *Griffith.*

It puts the proverbial cart before the horse to use the good faith exception to avoid application of a newly announced rule of constitutional law. The flaw inher-

ent in such an approach is that not even the Litchfields would have had the benefit of the new rule announced in their case.[4] Indeed, carried to its logical extreme it is unlikely that any new rule of search and seizure law could have retroactive application, including the case in which the new rule is announced. But insofar as the new rule benefits the original defendant, both our Supreme Court and the Supreme Court of the United States require that benefit to be applied as well to similarly situated defendants. Once more, those courts have each recognized that it "hardly comports with the ideal of administration of justice with an even hand[ ] when one chance beneficiary—the lucky individual whose case was chosen as the occasion for announcing the new principle—enjoys retroactive application, while others similarly situated have their claims adjudicated under the old doctrine." *Griffith,* 479 U.S. at 327, 107 S.Ct. 708 (quotations omitted); *see Pirnat,* 607 N.E.2d at 974.

Again, we must conclude that *Litchfield* applies retroactively and that application of the good faith exception must take *Litchfield* into account. It follows that on these facts Detective Earley's reliance on the confidential informant's tip was completely lacking in indicia of reliability, rendering his official belief in its existence unreasonable under *Litchfield.* Hence, suppression of the evidence is appropriate under the third prong of the *Leon* test. *See Leon,* 468 U.S. at 923, 104 S.Ct. 3405.

### Statutory Good Faith

■ In Indiana, the good faith exception to the exclusionary rule also has been codified in the good faith statute. Specifically, the good faith statute provides, in relevant part:

> 4. This is not to say that the good faith exception could not have been applied to the Litchfields; rather, any such application must have incorporated the new rule of that case.

(a) In a prosecution for a crime . . ., the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.

(b) For purposes of this section, *evidence is obtained by a law enforcement officer in good faith if:*

(1) *It is obtained pursuant to:*

\* \* \*

■ (B) *A state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated;* and

(2) The law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under IC 5–2–1–9.

I.C. § 35–37–4–5 (emphases added). In other words, if evidence is obtained pursuant to a judicial precedent subsequently declared unconstitutional, then, by statute, that evidence was obtained in good faith and is, therefore, admissible.

In light of the good faith statute, the State contends that the evidence obtained by Detective Earley from Belvedere's trash is admissible, as *Litchfield* later declared the law Detective Earley relied upon unconstitutional.[5] Belvedere responds that applying the good faith statute to him would violate the rights guaranteed to him under the Indiana Constitution. Again, we must agree with Belvedere.

> 5. Belvedere does not contest the legality of Detective Earley's search of his trash under *Moran,* which stated the law on trash searches in Indiana before *Litchfield.*

■ The good faith statute cannot be applied to these facts. A rule of constitutional law cannot be negated by statute. *See* I.C. § 1–1–2–1. And to apply the good faith statute here would both negate our Supreme Court's holding in *Litchfield* and also require this court to ignore the weight of authority on the issue of *Litchfield's* retroactivity. As *Litchfield* announced a new rule of constitutional law, the good faith statute cannot nullify that rule's retroactive application.

■ We also are not persuaded by the State's argument that the good faith statute applies for another reason. It is the province of the judiciary to determine the admissibility of evidence. *See Campbell v. Shelton*, 727 N.E.2d 495, 500 (Ind. Ct.App.2000), *trans. denied.* The exclusionary rule is a rule of evidence and, as such, a statute cannot divest our Supreme Court of its authority to determine that rule's operation and effect. Indeed, where, as here, a "conflict exists [between a statute and a rule of evidence], the conflicting statute is nullified." *Humbert v. Smith*, 664 N.E.2d 356, 357 (Ind.1996) (citation omitted). "Rules of procedure, including rules of evidence, established by [our Supreme Court] prevail over any statute." *Harrison v. State*, 644 N.E.2d 1243, 1251 n. 14 (Ind.1995), *superseded in part on other grounds by statute.*

■ Finally, application of the good faith statute would undermine principles of equity and our Supreme Court's precedent in similar situations. *See Griffith*, 479 U.S. at 327, 107 S.Ct. 708; *Pirnat*, 607 N.E.2d at 974.[6] If it applied here, the good faith statute would distinguish between the Litchfields, who were lucky enough to be the first defendants to reach our Supreme Court, and Belvedere, who was not so lucky. Such an arbitrary distinction is based "solely [on] the fortuities of the judicial process." *See Griffith*, 479 U.S. at 327, 107 S.Ct. 708.

### Conclusion

In sum, we decline to hold that *Litchfield* does not apply to Belvedere, a person similarly-situated to the Litchfields and whose case was "pending on direct review or not yet final" at the time *Litchfield* was decided. *See Smylie*, 823 N.E.2d at 687; *Pirnat*, 607 N.E.2d at 974. Hence, *Litchfield* must be applied in our analysis of the constitutionality of Detective Earley's search of Belvedere's trash. In reviewing that search under *Litchfield*, we conclude that the search violated Article I, Section 11 of the Indiana Constitution, and that Indiana's constitutional good faith exception cannot save the evidence seized by that search.

We also hold that Belvedere has "a right to invoke a new constitutional rule promulgated by our [S]upreme [C]ourt." *See Turner*, 843 N.E.2d at 943 n. 2 (discussing *Smylie*, 823 N.E.2d at 687); *see also Pirnat*, 607 N.E.2d at 974. Accordingly, the

---

**6.** Belvedere argues that applying the good faith statute here would violate Article I, Section 23 of the Indiana Constitution, which provides that "[t]he General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." The State responds that Belvedere has waived his right to challenge the constitutionality of the good faith statute because he did not file a motion to dismiss in the trial court alleging the good faith statute to be unconstitutional. *See* I.C. §§ 35–34–1–4, –6; *Wiggins v. State*, 727 N.E.2d 1, 5 (Ind.Ct.App. 2000). However, "the constitutionality of a statute may be raised at any stage of the proceeding." *Morse v. State*, 593 N.E.2d 194, 197 (Ind.1992); *see James v. Pike County Office of Family & Children*, 759 N.E.2d 1140, 1143 (Ind.Ct.App.2001). In any event, we need not reach that issue as we hold that the good faith statute does not apply on these facts.

statutory good faith exception cannot be applied here as it would vitiate Belvedere's right to invoke the new rule promulgated by our Supreme Court. Thus, all evidence seized from Detective Earley's trash search, including the evidence seized pursuant to the subsequent search warrant, should have been excluded from Belvedere's trial. As no other evidence was introduced by the State, Belvedere's convictions must be reversed.

Reversed.

MATHIAS, J., concurs.

BRADFORD, J., dissents with separate opinion.

BRADFORD, Judge, dissenting.

While I agree, in the abstract, with the majority's conclusion that the Indiana Supreme Court's decision in *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005), applies retroactively,[7] I must respectfully dissent, as I conclude that the good faith exception applies in this case. Consequently, I would affirm the trial court in all respects.

### A. Case Law Good Faith Exception

The Indiana Supreme Court first adopted the exclusionary rule in *Callender v. State*, 193 Ind. 91, 96, 138 N.E. 817, 818 (1923), in which it held that "[i]f the property was secured by search and seizure under the pretext of a search warrant, which was invalid for any reason, then the property so seized could not be used as evidence against the appellant and its admission over his objection was prejudicial error."[8] In 1984, the United States Supreme Court firmly established the so-called "good faith exception" to the exclusionary rule in the context of search warrants, holding that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922, 104 S.Ct. 3405. The *Leon* court identified several situations, however, where

7. As it happens, a curious result of the application of the good faith exception in this context is that it renders the question of retroactive application of *Litchfield* moot, at least for our purposes. In other words, even though any pre-*Litchfield*, *Moran*-compliant trash pull unsupported by reasonable suspicion would run afoul of Article I, Section 11, the fruits of the pull would *always* be admissible by virtue of the good faith exception. In the end, at least in criminal cases, *Litchfield* may as well *not* be retroactive because its retroactive application will never help (whether it might help in the context of a civil rights action is, of course, a question for another day). The majority cites this result as one reason that the good faith exception should not apply here, but I do not believe that we should negate what I believe to be a textbook application of the good faith exception so that a question of retroactivity is rendered relevant.

The majority also concludes that application of the good faith doctrine here would deny Belvedere recourse to a new rule of substantive constitutional law. This is not, strictly speaking, true, although, as I explained above, it is true that it would do him little good here were my view to be adopted. I suppose, in a sense, that it might be considered unfair were Litchfield to benefit from his case being decided before Belvedere's, but "fairness," I believe, is an inadequate basis upon which to decide such questions. In any event, one could just as easily argue that it is equally (or even more) unfair to confer a windfall on a convicted criminal in a case where all agree that no official misconduct occurred.

8. Interestingly enough, this passage, as it appears on the www.westlaw.com database and in West Publishing's printed North Eastern Reporter, includes a comma after the word "appellant" that does not appear in the official Indiana Reports. While one can only speculate at this point as to the source of this 1923 error, and while the error does not seem to alter the meaning of the passage, I, for one, will exercise caution in citing to non-official authorities in the future.

exclusion would still be appropriate, including where a warrant is based "on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Id.* at 923, 104 S.Ct. 3405 (citation omitted).

The majority concludes that, because Detective Earley's reliance on the confidential informant's tip was lacking in indicia of reliability, suppression is appropriate under *Leon.* In my view, however, *Leon,* as a search warrant case, simply does not apply here. As it happens, the Supreme Court had already recognized a good faith exception to the exclusionary rule in situations much like the one before this court today. In *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979), on which the *Leon* court relied, the Supreme Court noted that

> [t]he purpose of the exclusionary rule is to deter unlawful police action. No conceivable purpose of deterrence would be served by suppressing evidence which, *at the time it was found on the person of the respondent, was the product of a lawful arrest and a lawful search.* To deter police from enforcing a presumptively valid statute was never remotely in the contemplation of even the most zealous advocate of the exclusionary rule.

*Id.* at 38 n. 3, 99 S.Ct. 2627 (emphasis added). This situation is directly analogous to the instant case, and, as such, I believe *DeFillippo* governs, not the warrant-specific rules of *Leon. DeFillippo's* application leads to the conclusion that the good faith exception applies here. Because all agree that the trash pull here was legal when it was performed, no conceivable purpose of deterrence would be served by suppressing its fruits, and I therefore conclude that the good faith exception should apply.

**B. Statutory Good Faith Exception**

Indiana Code section 35–37–4–5(b)(1)(B) provides that evidence may not be suppressed if "it is obtained pursuant to ... a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated[.]" The majority concludes that Indiana Code section 35–37–4–5(b)(1)(B) negates a "rule of constitutional law" in violation of section 1–1–2–1, which declares, in part, that "[t]he law governing this state is ...: First. The Constitution of the United States and of this state. Second. All statutes of the general assembly of the state in force, and not inconsistent with such constitutions."

Having concluded that the trash pull evidence is admissible under *DeFillippo,* I would not even reach the question of whether Indiana Code section 35–37–4–5 violates the Indiana Constitution. I agree with the majority that "Indiana's constitutional good faith exception to the exclusionary rule is identical to the federal exception[.]" I further believe that Indiana Code section 35–37–4–5 is merely a codification of the good faith exception as described in case law. In other words, Indiana Code section 35–37–4–5(b)(1)(B) applies to cases like this one and those described in *DeFillippo,* involving searches that were legal when they were performed, but, at some point afterwards, declared otherwise.[9] Because I agree that the Indiana good faith exception is coextensive with the federal good faith exception and conclude that Indiana Code section 35–37–4–5 is merely a codification of well-settled case law in that area, the existence of such a codification is essentially irrelevant. We would be subject to the *DeFillippo* good

---

**9.** On the other hand, Indiana Code section 35–37–4–5(b)(1)(A) applies to situations like those described in *Leon, i.e.,* good faith reliance on facially valid search warrants.

faith exception (for searches that were legal when performed) even if section 35–37–4–5 had never been enacted. As such, I see little reason to address its constitutionality.